JOURNAL ENTRY and OPINION
{¶ 1} After entering guilty pleas to one count of forcible rape and one count of kidnapping with a sexual motivation specification, both of which involved a thirteen-year-old female victim, defendant-appellant Diondre Fisher appeals from the sentence imposed and from the trial court's classification of him as a sexual predator.
 {¶ 2} Fisher argues his sentence is improper on the bases it is unsupported and it contravenes the United States Supreme Court's decision in Blakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531. Fisher similarly argues his classification is unsupported.
 {¶ 3} This court cannot agree with Fisher's arguments; therefore, his sentence and his classification as a sexual predator are affirmed.
 {¶ 4} Fisher originally was indicted in this case along with his cousin Michael Higgins on five counts, viz., four counts of forcible rape of a thirteen-year-old female and one count of kidnapping with a sexual motivation specification. After a lengthy process of pretrial hearings, Fisher and Higgins each negotiated a plea agreement with the same terms. Thus, in exchange for pleas of guilty to counts one and five, first degree felonies, the remaining counts were dismissed.
 {¶ 5} The trial court accepted Fisher's pleas following the colloquy with him, set a date for the combined sentencing and sexual offender classification hearing, then referred each defendant to the probation department for a presentence report and to the psychiatric clinic for an assessment. The court received the reports prior to the hearing.
 {¶ 6} On the date of the hearing, the court first considered Fisher's sexual offender status. The state presented the testimony of the detective who investigated the case.
 {¶ 7} According to the detective's investigation, twenty-three-year-old Higgins approached the victim on July 6, 2003 while she was playing with friends at a local park. He enticed her to accompany him a short distance away on the premise that he wanted to ask her something, then offered her a marijuana cigarette. Although she refused that offer, she acquiesced when Higgins additionally requested her telephone number.
 {¶ 8} The following day, as the victim rode her bicycle along the street, Higgins drove by with Fisher, who was twenty years old, in his car, stopped, and asked the victim if she wanted to "chill" with him and his cousin. The victim agreed. She placed her bicycle in her yard and entered the car, but stayed with the men only a little time since they all observed her grandmother looking for her.
 {¶ 9} Later that night, however, Higgins telephoned the victim and invited her to meet him and Fisher. She left her house surreptitiously; the men took her to the basement of Fisher's home. Once there, the men offered her alcohol and "Black and Tan" cigarettes. The victim eventually became inebriated and dizzy.
 {¶ 10} Fisher began to dance with the victim, soon gained control of her by pulling her hair, threatened to kill her if she resisted him, and pushed her onto a couch. He removed her clothing, then raped her vaginally. Higgins, who had been absent during the time this occurred, reentered the room; rather than responding to her pleas for aid, Higgins forced her to kneel in front of him and to suck his penis while Fisher raped her anally.
 {¶ 11} The victim became sick and pleaded to use the bathroom. The men allowed her to do so, but she took the opportunity to flee, naked, to a neighbor's house. When the police responded, they transported the victim to the hospital. The medical examination of her demonstrated she had suffered a vaginal tear and anal abrasions in the attack.
 {¶ 12} The victim identified her attackers; a search of Fisher's home yielded her clothing and traces of her menstrual blood on Fisher's boxer shorts.
 {¶ 13} After considering the detective's testimony along with the exhibits offered into evidence, the trial court classified Fisher as a sexual predator. When the matter proceeded to sentencing, the court heard statements made on behalf of the victim and the defendant, and Fisher's personal statement, before it sentenced Fisher to concurrent terms of eight years on each of the counts.
 {¶ 14} This court has permitted Fisher to file a delayed appeal in which he presents the following two assignments of error:
 {¶ 15} "I. The trial judge erred in sentencing the appellant to more than the minimum sentence for the offenses of Rape and Kidnapping as the appellant had not previously been incarcerated in a state or federal prison.
 {¶ 16} "II. The evidence is insufficient to sustain a finding that the appellant is a sexual predator."
 {¶ 17} In his first assignment of error, Fisher challenges his sentence on two grounds. He initially claims a total sentence of eight years is unjustified. He further claims that, even if it meets Ohio statutory requirements, a non-minimum sentence for an offender who has not previously served a prison term contravenes the United States Supreme Court's decision in Blakely v. Washington, supra. Neither claim has merit.
 {¶ 18} R.C. 2929.14(B) provides that when an offender previously has not been imprisoned, "the court shall impose the shortest prison term authorized for the offense * * * unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others." The court must pronounce these findings at the sentencing hearing. State v. Comer, 99 Ohio St.3d 463, 469,2003-Ohio-4165.
 {¶ 19} The transcript of Fisher's sentencing hearing demonstrates the trial court fully complied with its duties. Furthermore, the trial court justified the term it chose by stating that the young victim had not only been sexually assaulted by two adult men, but "suffered" both "violence and humiliation" before she found safety. State v. Edmonson,86 Ohio St.3d 324, 1999-Ohio-110; State v. Higgins, Cuyahoga App. No. 85229, 2005-Ohio-3025.
 {¶ 20} Fisher's additional claim that his sentence contravenesBlakely has been rejected by this court in State v. Adkins-Boozer,
Cuyahoga App. No. 84151, 2005-Ohio-2666.
 {¶ 21} Accordingly, Fisher's first assignment of error is overruled.
 {¶ 22} Fisher next asserts the trial court's classification of him as a sexual predator lacks an adequate basis. This court cannot agree.
 {¶ 23} The Ohio Supreme Court has directed a trial court to engage in a weighing process when considering any factors it finds relevant to a sexual predator determination. State v. Thompson, 92 Ohio St.3d 584,2001-Ohio-1288. R.C. 2950.09 requires the trial court to discuss on the record those factors upon which it actually relied in making a determination as to the offender's status. State v. Eppinger,91 Ohio St.3d 158, 2001-Ohio-247. A review of the transcript of the hearing reveals the trial court complied with its duties by mentioning each of the facts and the factors it considered in its weighing process. Id.
 {¶ 24} In considering the crimes, the court noted Fisher committed them with his cousin. Thus, Higgins selected and flattered with his attention the young victim who, although a stranger particularly to Fisher, became the prey of both adult males. Together, the men ensured that under cover of darkness the victim left the place where she had security, transported her to a place under their sole control which lacked a ready means of escape, and lowered her ability to resist by plying her with alcohol. Fisher then disrobed her and forced her into sex acts in which Higgins ultimately joined; the acts were so brutal that the victim sustained physical damage to her vaginal and anal areas. The victim managed to flee captivity only by invention and enduring the embarrassment of her nakedness.
 {¶ 25} Under these circumstances, the victim also had sustained psychological harm that required extensive therapy. Fisher excused his role in the crimes by claiming the victim had been a willing participant; therefore, he obviously had made no effort to gain insight into his culpability.
 {¶ 26} The trial court acknowledged that if it relied upon just the psychiatric assessment, an evaluation of Fisher's risk of recidivism was "difficult" to analyze. The court was convinced, however, that Fisher's risk of recidivism was great based upon the facts of the incident: he cooperated with his cousin in order to commit the kidnapping and rapes, took the leading role in perpetrating the sex acts, and threatened to kill the victim.
 {¶ 27} This court cannot gainsay the trial court's analysis. As set forth in State v. Courts, Cuyahoga App. No. 85237, 2005-Ohio-3423, casting recidivism potential in only statistical terms "is misleading; it may imply the risk that the perpetrator will reoffend is not `likely,' as set forth in the statutory definition of a sexual predator. R.C.2950.01(E). The test under which the court must weigh the evidence, however, is whether it is `clear and convincing,' thus instilling in the court a `firm belief' that the potential exists. State v. Eppinger,
supra.
 {¶ 28} "The extent of the physical and long-term psychological harm a sexual offender inflicts upon his victim, particularly a child victim, is exponentially greater than that of the perpetrator of a more non-invasive offense. Viewed in the context of the announced purpose of `Megan's Law,' therefore, a nearly forty percent chance of committing another rape constitutes a greater `risk' than does a sixty percent chance of committing, for instance, another shoplifting.
 {¶ 29} "As this court observed in the case of a claim against an employer for intentional tort, `[w]hile statistical assessments may be helpful * * *, they are not conclusive,' because the prediction of risk `involves not only a consideration of the likelihood that harm will occur, but also an assessment of the seriousness of the harm if the risk does come to pass.' Padney v. MetroHealth Med. Ctr. (2001),145 Ohio App.3d 759 at 767. In other words, risks differ depending on the potential injury which may occur; consequently, courts `cannot attach decisive significance to statistical risk assessments.' Id."
 {¶ 30} The psychiatric statistical assessment may have placed Fisher in the "medium to low" risk category of reoffending. Nevertheless, since the record demonstrates that Fisher had an appropriately-conducted hearing, was ably represented by competent counsel, and that the trial court carefully evaluated the evidence presented in conjunction with the statutory criteria, this court will not disturb its determination. Statev. Higgins, supra; State v. Courts, supra.
 {¶ 31} Accordingly, Fisher's second assignment of error also is overruled.
 {¶ 32} Fisher's sentence and classification are affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Gallagher, P.J. and Kilbane, J. Concur.